Beatty, Appellant, *v.* Hottenstein.

608

Argued January 4, 1955.    Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*John  G.  Bartol,  Jr.,  James  A.  McGoldrick,  Butler,
James  A.  Moore,* with him *A.  Sidney  Johnson,  Jr.,
Beatty,  Greer  &  Johnson,* and *Pepper,  Bodine,  Frick,
Scheetz  &  Hamilton,* for appellants.

*R. Winfield Baile,* with him *George W. Thompson,* for appellee.

Opinion by Mr. Justice Chidsey, March 14, 1955:

This is a companion case to *Roberts Estate* (appeals of Robert W. Beatty and Margaret Harrison, executors, and of Ella N. Greenfield, residuary legatee), decision in which was filed cotemporaneously herewith (see 380 Pa. 600, 112 A. 2d 394). The history of the litigation preceding the present appeal appears at length therein.

Briefly stated, William J. Roberts, the decedent, died on May 20, 1949. After his death two wills were discovered, one dated March 18, 1948 and the other May 11, 1948. In the earlier (March) will testator left his coal and building supply business to Ella N. Greenfield as part of his residuary estate. In the later (May) will he specifically bequeathed the business to William Hottenstein, again leaving the residue to Mrs. Greenfield. Following probate of the March will, Hottenstein appealed, alleging the May will to be decedent's last will. To avoid a will contest Hottenstein, Mrs. Greenfield and the executors under the March will entered into an agreement of settlement. Thereafter, alleging breach of this agreement by the executors and Mrs. Greenfield, Hottenstein proceeded with his appeal from the probate of the March will and on February 13, 1953 this Court sustained the decree of the court below upholding the validity of the May will (373 Pa. 7), which was thereupon probated. Following the filing of a first and final account on October 20, 1953 by the executors under the March will who by order of the court below were directed to complete the administration and distribution of the estate under the May will, the court below awarded to Hottenstein all monies paid by him to the executors under

the terms of the abortive settlement agreement, and upon appeal we sustained this award in our decision above referred to, filed this day.

On December 28, 1953 Robert W. Beatty and Margaret Harrison as executors filed a complaint in equity in the Court of Common Pleas of Delaware County against Hottenstein seeking to recover profits allegedly made by him in conducting the business subsequent to the termination of the settlement agreement in 1950 and praying for an accounting by him. Defendant filed preliminary objections thereto. With leave of court an amended complaint was filed to which defendant again filed preliminary objections in the nature of a demurrer. The court entered an order sustaining the preliminary objections and entered judgment for the defendant. The present appeal is by the executors from this judgment.

In defendant's preliminary objections it was asserted that the complaint failed to state a cause of action in that by its averments it disclosed the validity of the May will as sustained by this Court, under which the defendant Hottenstein was legally entitled to the decedent's business and to conduct it from the date of decedent's death; that during the period for which an accounting was sought he alone had possession of and conducted the business, the plaintiffs in no manner having actively engaged in its management and operation; that there was no averment that the alleged profits were required for the payment of any debts or obligations of the decedent or his estate; and that the complaint failed to disclose any necessity or reason for an accounting.

We quote the following portion of the opinion of the court below and approve the conclusion reached therein: "A specific legacy or devise is a gift by will of a specific article or part of the testator's estate,

which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing: Snyder's Estate, 217 Pa. 71, 73. There can be no doubt that the gift of decedent's business to defendant contained in the later will, was a specific legacy: Gerlach Estate, 364 Pa. 207, 210. Section 753(b) of the Fiduciaries Act of 1949, 20 PS 320, 753, provides that, 'A specific legatee or devisee shall be entitled to the net income from property given to him accrued from the date of the death of the decedent'. The Act does not apply to this case since Mr. Roberts died before its effective date. However, as pointed out in the Commission's Comment, while subsection (b) has no statutory precedent, it is in accord with existing case law. In Oakley v. Gries, 1 Woodward's Decisions, 311, 312, it is said: 'In the case of a specific legacy the rule is different. "The law considers such a legacy as severed from the bulk of the testator's property, by the operation of the will, from the testator's death, and with its increase and emolument, specifically appropriated for the benefit of the legatee from that period; so that interest is computed on it from the death of the testator." 2 Roper on Legacies, 1249; Ward on Legacies, 299. This rule in all the authorities collected in the text books is held uniformly and without exception.' In Robinson's Estate, 24 County Court Reports, 588, it is said at page 589: 'Specific legacies are considered as separated from the general estate and appropriated at the time of the testator's death: Williams on Executors, 1220. Being specific, the legatee was entitled to the possession immediately upon the death of the testatrix, unless they might be needed to satisfy the debts.' And at page 591: 'The legacy, being specific, is to be considered as appropriated at the time of the death of the testatrix: Williams on Executors, supra.

It naturally and conclusively follows that the legatee is entitled to all the benefits from it arising thereafter.' See, also, Earp's Will, 1 Parson's Select Equity Cases, 453; Mizener's Estate (No. 1), 72 Pa. Superior Ct. 400. Our cases are in accord with the uniform current of authority elsewhere. In a note on the subject in 116 A. L. R. 1129, at page 1130, it is said: 'On the other hand, specific legacies or devises are severed from the general estate of the testator immediately upon his death, and, in the absence of any provision to the contrary in the will, they become payable at the death of the testator. Consequently, according to the rule almost universally recognized by the courts, in the absence of a contrary intention in the will, such legacies or devises carry with them to the specific legatees or devisee any interest, dividends, rents, profits, or accretions, not otherwise disposed of by the will, that may have accrued on them from the death of the testator until the actual satisfaction of the legacy or devise; and such interest, dividends, etc., do not become a part of the general or the residuary estate of the testator.' The complaint before us presents an unusual situation, as we have said before. Defendant entered into possession of the decedent's business and operated it in pursuance of the 'family settlement' of July 18, 1949. That agreement proved to be more exploratory than definitive. The agreement was abandoned about a year later, and, on July 6, 1950, defendant appealed from the probate of the earlier will. Defendant continued to operate the business pending the lengthy will contest, despite plaintiffs' demand of July 28, 1950, for possession. It was not until February 13, 1953, with the decision of the Supreme Court, that the validity of the later will, giving the business to defendant, was finally established. But there is no contention that the profits of the business in the meantime, if any, are re-

quired for the payment of debts. Neither is there any pretense that plaintiffs, or either of them, had anything whatsoever to do with the actual conduct and operation of the business, or that the credit of the estate was in any wise involved therein. In these circumstances, we can perceive no reason in law or morals why any profits of the business do not belong to the defendant. Any other conclusion would defeat the obvious intent of the testator. It was not the defendant's fault that a lengthy will contest delayed the probate of Mr. Roberts' last will and testament. We said in the course of our earlier opinion, and we remain of the same mind, that: 'If, then, it be the plaintiffs' theory that the "rescission" of the agreement, on June 26, 1950, without more, operated in law to convert defendant into an "agent" or "trustee" for the estate in the conduct of the business thereafter, we most emphatically register our dissent. The general rule as to the right to the income and profits on specific legacies and devises is as stated by plaintiffs in their brief. The fact that defendant took possession of the business, and accumulated the profits thereon, or part of them, during a time when the ownership of the business was in doubt, is utterly immaterial in the light of the fact that defendant's title had been established at the time of the institution of this suit.' It is plaintiffs' 'theory' of the case 'that Hottenstein was wrongfully in possession of the Roberts business from July 6, 1950 until August 13, 1953, that during that time he was acting as a fiduciary for the estate and that accordingly he should account to the plaintiffs' executors for the profits earned by him in that time'. We do not agree that defendant was wrongfully in possession of the business during the period indicated. We do not see how such proposition can be asserted with any show of reason in view of the Supreme Court decision of February 13,

1953. The most that can be said for plaintiffs' position is that Hottenstein's right to possession of the business was *questionable* during the period in dispute. But his possession was validated, and his right thereto confirmed, by the decision of the Supreme Court. That decision related back, in a manner of speaking, to the date of decedent's death. Plaintiffs place their sole reliance, as they have all along, on the decision of the Superior Court in Flannigan's Estate, 28 Pa. Superior Ct. 487. It appears from the report of the case that Flannigan, a blacksmith, died in January, 1899, supposedly intestate. The administrators carried on the blacksmith shop after decedent's death until August 1, 1899, when they sold it to Koehler, who had been decedent's foreman, for the sum of $900. During the time the administrators carried on the business, they employed Koehler and paid him $700 in wages. In April, 1900, a will of decedent was discovered, and, after a lengthy contest, it was admitted to probate. The will gave the blacksmith shop to Koehler. The lower court awarded to Koehler the $900 paid by him for the shop, with interest thereon to date of decree, and also awarded him $604.36, the profits realized by the administrator in conducting the business, together with interest. On appeal, however, the Superior Court ruled that the profits belonged in the residuary estate. The crux of the decision appears in the following from the opinion of the Superior Court (p. 490) : 'It is, therefore, difficult to discover any theory which will give Koehler the benefit of the profits accruing from such business. The administrators from time to time, used the money of the estate, at their own risk, in carrying on the business. Not a penny of Koehler's money nor a particle of his credit earned these profits. The decree of the learned court restores to him his $900 which he paid for the shop, which belonged to him under the

will, and interest thereon. This portion of the decree
rests upon a solid basis. The estate had Koehler's
money and the law implies a contract to repay it with
interest. But as to the profits of the business, the es-
tate had nothing belonging to Koehler and it is under
no obligation to hand over to him $604.36, with inter-
est thereon, in addition to full and liberal wages dur-
ing all of the time he was kept out of the use of the
shop. It is possible, if he had presented a claim for
the use or rental value of the shop during the seven
months of its use by the administrators, and proved
the value thereof, it might have been allowed him. But
that question is not raised in this record and, there-
fore, it is not decided.' Plaintiffs contend, in effect,
that defendant should have permitted them to operate
the business after the abandonment of the settlement
agreement, so that they could have invoked the rule
of the *Flannigan* case. They say in their brief, '. . . had
the present plaintiffs run the Roberts business, the
large profits which have accrued (less a reasonable
rental to Hottenstein for the value of his property and
a reasonable compensation for his services) would have
gone to Mrs. Greenfield, the residuary legatee'. The
fact remains, however, that plaintiffs did *not* 'run' the
business. We are confronted with a condition, not a
theory. It is pointless now to speculate as to the nature
and extent of plaintiffs' rights with respect to the busi-
ness after the revocation of the settlement agreement
in July of 1950. Plaintiffs apparently took no legal
action to assert and vindicate any rights they may have
had. We feel constrained to say, however, that we do
not agree that the rule in Flannigan's Estate would
have controlled even if the plaintiffs had operated the
business and realized a profit therefrom. It is pointed
out in the *Flannigan* opinion that the administrators
'had no knowledge of the will' and 'carried on the busi-

616

ness at their own risk and expense in entire good faith' (p. 489). Here, the plaintiff executors would have carried on the business with full knowledge of defendant's rights in the business in the event the later will should be sustained, and of the consequent risks implicit in their undertaking. We conclude, therefore, that the amended complaint fails to state a cause of action, and that defendant's preliminary objections must be sustained.".

Judgment affirmed, costs to be paid by the Estate.