391 A.2d 991

**ESTATE of William B. TAYLOR, Deceased.**

**Appeal of Dorothy CALDWELL.**

Supreme Court of Pennsylvania.

Argued March 10, 1977.

Decided Oct. 5, 1978.

Henry E. Sewinsky, Rodgers, Marks & Perfilio, Sharon, for appellant.

William J. Joyce, Cusick, Madden, Joyce & McKay, David Goodwin, Sharon, for Hannah Mary Taylor Estate and Frances Lewis.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

William B. Taylor died testate on June 16, 1969, a resident of Mercer County, Pennsylvania. Among the assets of his estate was a mortgage on land in Hartford Township, Trumbell County, Ohio, owned by one Roy Kepner and his wife. The mortgage debt was paid during the course of the administration of the estate, and by their account the executors of Taylor's will proposed that the proceeds of the mortgage be distributed as part of the residuary estate. Mrs. Dorothy Caldwell, of Buryhill, Ohio, the appellant here, filed exceptions to the account, claiming that she was entitled to the mortgage proceeds. The basis of her claim was that by his will the decedent had made a specific devise of this property to Mrs. Caldwell, and that this provision served to pass the mortgage to her. The court below dismissed Mrs. Caldwell's exceptions and confirmed the executors' account absolutely.[1] This appeal was then taken.[2] We will affirm.

### I.

Paragraph Second of William Taylor's will, executed February 29, 1968, and on which the Caldwell claim is based, reads as follows:

"SECOND: I give and devise unto MRS. DOROTHY CALDWELL, Race Track Road, Hartford, Ohio, my undivided interest in the land in Hartford Township, Trumbull

1. On preliminary objections to the exceptions the court first held in Mrs. Caldwell's favor. See *Taylor Estate*, 14 Mercer Co. L.J. 162, 25 Fiduc. Rep. 464 (1975). The court did not at that time rule on the exceptions themselves, and the second opinion of the court, dismissing the exceptions, is apparently unreported.

2. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(3), 17 P.S. § 211.202(3), since superseded by Section 722(3) of the Judicial Code, 42 Pa.C.S. § 722(3) (effective June 28, 1978).

County, Ohio, which I hold with Roy Kepner, to be hers, her heirs and assigns, absolutely and in fee."

The remainder of the dispositive portions of the will consisted of the grant, revoked by a codicil, to one Thomas March of a "first opportunity" to purchase a business conducted by Mr. Taylor, a gift of "all my jewelry" to one Frances Lewis, and a residuary clause devising the remainder of the estate among thirteen beneficiaries in varying percentage shares. Among the residuary beneficiaries were Frances Lewis (20%), three sons of the testator (15% to one and 10% to the others), six grandchildren (5% each), a business friend (5%), and two unidentified donees, a Mrs. Jeannie Reiss and a Mrs. Hannah Mary Taylor, each 5%. Mrs. Caldwell was not named as a residuary legatee. The executors were Alvin Taylor, a son, George Holliday, a friend, and a Sharon, Pennsylvania, trust company.

It is undisputed that William B. Taylor, the testator, did not at the time of his death or at any other time own any "interest in land", divided or undivided, in Trumbull County, Ohio. The executors, accordingly, made no provision in their account or their proposed schedule of distribution for any Ohio land or interest in land. As above stated, the accountants included the proceeds of the mortgage on the Ohio property in the residuary estate.

Apparently at the request of the executor of the estate, but without objection by Mrs. Caldwell or any other party in interest, an evidentiary hearing was held on Mrs. Caldwell's exception to the account. The witnesses were the scrivener of the will, who had been the testator's lawyer, Mrs. Dorothy Caldwell, Mrs. Roy Kepner and the individual executor. At the conclusion of the hearing the auditing judge made factual findings as to the "circumstances surrounding execution of the will and other facts bearing on the question." *Sykes Estate,* 477 Pa. 254, 257, 383 A.2d 920, 921 (1978). In essence, it was ascertained that in 1960 Roy Kepner and his wife by written agreement gave William B. Taylor the exclusive right to develop real property owned by the Kep-

ners in Trumbull County, Ohio. The agreement described the Kepners as "owners" and Taylor as "contractor", and provided that Taylor would receive one-half the sale price of each lot. The development project never materialized, however, due to lack of approval of the local planning board. The agreement was placed of record in December, 1968 (nine months after Mr. Taylor executed his will) when a mortgage foreclosure proceeding was commenced against the property. A month later, in January, 1969, Taylor himself purchased the mortgage from the mortgagee by paying the mortgage debt due by the Kepners. According to his lawyer, who handled the transaction, Taylor was obliged to borrow to accomplish this. It was this mortgage which Taylor owned when he died six months later.[3]

The orphans' court division concluded that the language of Paragraph Second of the will "could pass a mortgage interest", since it was of opinion that a mortgage, although personalty, is also an "interest in land". The court went on to hold, however, that because the mortgage was acquired after the execution of the will but before the death of the testator, and there had been no republication of the will after the date of acquisition, the mortgage could pass only by a general devise or bequest, such as the residuary clause, and not by a specific devise or bequest such as Paragraph Second of the will. See, e. g., *Williams v. Williams,* 83 Pa.Super. 90 (1924). There was no republication here, for the only codicil to the will was executed before the mortgage was purchased.

Although we agree with the result reached below, our approach is somewhat different.

**3.** During the course of administration of the Taylor estate his executors commenced foreclosure proceedings against the Kepner property. This was forestalled when the appellant, Mrs. Caldwell, and her husband purchased the land from the Kepners. The mortgage debt (approximately $8,000) was paid to the estate out of the purchase price. Thus what Mrs. Caldwell seeks, in effect, is a reduction in the amount of the purchase price she paid for the property equivalent to the amount of the mortgage then owned by the Taylor estate.

## II.

■ "It is, of course, a cardinal rule that a will is to be construed according to the intent of the testator." *Sykes Estate, supra,* quoting *Hamilton Estate,* 454 Pa. 495, 498, 312 A.2d 373, 374 (1973). See also *Blough Estate,* 474 Pa. 177, 378 A.2d 276 (1977); *Hill Estate,* 432 Pa. 269, 247 A.2d 606 (1968). Where a court feels that it can with reasonable certainty ascertain the intent of the testator through examination of the will itself, the court generally does not look to matters external to that document. *Kelly Estate,* 473 Pa. 48, 373 A.2d 744 (1977); *Jacobson Estate,* 460 Pa. 118, 331 A.2d 447 (1975); *Soles Estate,* 451 Pa. 568, 571–572, 304 A.2d 97, 99 (1973). Where, however, a court cannot feel such confidence in distributing the estate by reference to the will only, or where a latent ambiguity is discovered, it is proper and necessary to inquire into the circumstances of the testator at the time of execution of his will and other evidence which bears on intent. *Sykes Estate, supra; Kay Estate,* 456 Pa. 43, 317 A.2d 193 (1974); *Chambers Estate,* 438 Pa. 22, 263 A.2d 746 (1970). And if even then a court is unable to say with reasonable certainty what the testator intended, resort is had to the canons of construction. *Hamilton Estate, supra; Schappell Estate,* 424 Pa. 390, 227 A.2d 651 (1967).

■ Looking only to the first step of this process of testamentary adjudication, the case before us appears straightforward enough. Contrary to the argument of appellant, the gift to her in the second paragraph of the testator's will is obviously a specific devise[4] of "my [the testator's] undivided interest" in certain real property located in Hartford Township, Trumbull County, Ohio. As a specific devise, it will be adeemed if at the date of his death

---

4. A specific bequest or devise has been defined as "a gift by will of a specific article or part of the testator's estate, which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing." *Beatty v. Hottenstein,* 380 Pa. 607, 610, 112 A.2d 397, 399 (1955). See also *Wood's Estate,* 267 Pa. 462, 110 A. 90 (1920); *Snyder's Estate,* 217 Pa. 71, 66 A. 157 (1907).

the testator owned no such interest in the Ohio land described,[5] and no contrary intention appears.

■ It frequently happens that property specifically devised in a will is not owned by the testator at his death, usually because after execution of the will he sold or disposed of the property to another. As a general rule, Pennsylvania, like most American jurisdictions,[6] has regarded the gift as adeemed and does not recognize a right in the beneficiary to the proceeds of the sale or to property received in exchange. Mr. Justice NIX has recently described the law of ademption as applied in Pennsylvania, in speaking for the Court in *Nakoneczny Estate,* 456 Pa. 320, 319 A.2d 893 (1974):

"It has long since been decided in this jurisdiction that a specific legacy or devise is extinguished if the property is not in existence or does not belong to the testator at the

5. This Court has held that questions which arise under the wills of Pennsylvania-domiciled testators and which involve ademption of a devise of non-Pennsylvania real property are governed by the law of the state in which the land is situated. *Dublin Estate,* 375 Pa. 599, 604, 101 A.2d 731 (1954). *See* Restatement (Second) of Conflict of Laws, § 240.

To the extent that the problem in this case is one of ademption, it is theoretically governed by Ohio law. Neither party has informed us with respect to the Ohio law of ademption of devises of real estate or any aspect of the Ohio law concerning the interpretation of wills, and we therefore will apply Pennsylvania law. See *id.,* comment f. The record is silent as to whether or not ancillary administration of this estate in Ohio was either had or was required.

6. *See* 2 Bowe-Parker, Page on Wills § 21.81, at 488 (1960):

"In the absence of statutory provisions to the effect that devisees of realty shall receive the proceeds thereof if the land is conveyed by testator after he makes his will and before his death, and if no such intention appears from the will or the surrounding circumstances, the devisees of realty cannot take the purchase price in such case. It becomes personalty and passes either under the will or as intestate property. Since, at modern law, the land would pass under the will if testator had reacquired it and owned it at his death, this problem is one of ademption rather than revocation.

"Even if testator has taken back a purchase money mortgage upon the land which he has conveyed, the mortgage does not pass under a devise of the land."

*See also* 7 Powell on Real Property § 978 (1977); Note, Ademption in Pennsylvania: Real Estate, 69 Dick.L.Rev. 95; Note, Ademption and the Testator's Intent, 74 Harv.L.Rev. 741 (1961).

time of his death. Soles' Estate, 451 Pa. 568, 304 A.2d 97 (1973); McFerren Estate, 365 Pa. 490, 76 A.2d 759 (1950); Horn's Estate, 317 Pa. 49, 175 A. 414 (1934); Harshaw v. Harshaw, 184 Pa. 401, 39 A. 89 (1898); Hoke v. Herman, 21 Pa. 301 (1853); Blackstone v. Blackstone, 3 Watts 335 (1834). Testator's intent is not relevant where the property devised or bequeathed in his will is not part of his estate at death. Where the legacy has been determined to be specific '[t]he legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him; but if not, he cannot have money in place of it. This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator.' Horn's Estate, supra, 317 Pa. at 53, 175 A. 414; Hoke v. Herman, supra, 21 Pa. at 305. See also, Harshaw v. Harshaw, supra; Pruner's Estate, 222 Pa. 179, 70 A. 1000 (1908). This rule is equally applicable where the specifically devised or bequeathed property is removed from testator during his lifetime by an involuntary act or by operation of law. Harshaw v. Harshaw, supra; Pleasants' Appeal, 77 Pa. 356 (1875). Thus, where it is established that the bequest or devise was specific and the nonexistence of the item in the testator's estate at the time of death, an ademption results." 456 Pa. at 323, 319 A.2d at 895–96 (footnote omitted).

See also *Cooper's Estate,* 4 Pa. 88 (1846). Similarly, the Pennsylvania common law of ademption did not recognize a right in the beneficiary to a purchase money mortgage which the testator acquired at the time of sale of the devised real estate. *Gibson's Estate,* 57 Pa.Super. 283 (1914); *Colonial Trust Co. v. Homan,* 29 Pa.Dist.R. 912 (C.P. Berks County 1920). See also *Bower's Estate,* 262 Pa. 48, 104 A. 824 (1918).[7]

7. The common law rule has now been changed by an amendment to our former Wills Act through the adoption of a new rule of construction of wills. 20 Pa.C.S. § 2514(18) (Supp.1978), added by the Act of July 9, 1976, P.L. 551, No. 135, § 13. This modification is applicable in the absence of a contrary intent appearing in the will and is

The operation of the law of ademption is not necessarily inflexible. For example, where the devise of specific real estate described the property as "under agreement of sale," we held, applying New Jersey law, that the beneficiary took the proceeds of the pre-death sale. *Dublin's Estate,* 375 Pa. 599, 101 A.2d 731 (1954). And in *Frost's Estate,* 354 Pa. 223, 47 A.2d 219 (1946), where the testamentary gift was of "proceeds" of General Motors stock, we held that a pre-death sale of the stock did not adeem the specific bequest. See also *Tweitmann's Estate,* 293 Pa. 202, 142 A. 210 (1928); *Black's Estate,* 223 Pa. 382, 72 A. 631 (1909).

There being no language in the Taylor will which would suggest application of other than the general rule above stated (see, *Nakoneczny Estate, supra; Cooper's Estate, supra; Gibson's Estate, supra*), and in the absence of any additional facts indicating a contrary result, it would follow that the mortgage held by William Taylor at the time of his death on the Trumbull County, Ohio land is not within the description of "undivided interest in land" contained in Paragraph Second and that the devise has adeemed.

We have nevertheless reviewed the record of the evidentiary hearing, and it is apparent that it does not reveal any additional facts which call for a different result than would have obtained had no hearing been held. Although both the named devisee and the scrivener of the will were called as witnesses, the record is barren of any information from which one can deduce the testator's intent in including the second paragraph of his will. There is no showing of who Mrs. Caldwell is or what her relationship to the testator was. All that her testimony discloses is that she knew of the existence of the Taylor/Kepner agreement and of the earlier work Mr. Taylor had done on the Kepner property. There is

entitled "Nonademption; balance". It provides that a devisee of a specific devise is entitled to any of the devised property which the testator owned at his death, plus any proceeds or property received in exchange for the devised property in several enumerated situations. While this amendment, because of the date of its enactment, is not applicable to the case at bar, we note that it would not in any event apply to the situation presented here.

no evidence from any source that Mr. Taylor meant to pass to Mrs. Caldwell his contract rights with the Kepners.[8] The testator's lawyer testified that he prepared at Mr. Taylor's request a deed from the Kepners to Taylor of the Kepner property in Ohio, and a declaration of trust by Taylor in favor of the Kepners of one-third of the property to be deeded, but that these instruments were never executed. Copies of these papers were introduced as exhibits; they provide for an execution date in February, 1969, a year after execution of the will. It may be that when he wrote the will Mr. Taylor had an expectation or hope of owning the Kepner land which never materialized. Cf. *Zimmerman's Estate*, 53 Pa.D. & C. 287 (O.C. Lack. Co. 1945). The auditing judge made no finding in this regard.

With respect as to the mortgage here in issue, Mr. Taylor's lawyer testified that it was acquired because when foreclosure was commenced against the Kepner land, "Kepner was unable to refinance", and Taylor wanted to protect his "investment in that land." The "investment" referred to was uncompensated services performed by Taylor in laying out roads and constructing ponds on the premises which Kepner hoped to develop. As noted above, Taylor himself "had to borrow the money . . . to pay off the Trumbull Savings and Loan." In less than six months after this transaction, Taylor died. The testimony does not suggest and the auditing judge did not find that Taylor associated this acquisition in any way with his testamentary provision for Mrs. Caldwell.

In short, no facts were developed at the hearing which helpfully added to the basic facts already known, *viz.*, that the testator did not own the property he purported to devise

8. It is to be noted that Mrs. Caldwell has not claimed entitlement to the development contract in this proceeding, or argued that the second paragraph of Mr. Taylor's will was intended to give it to her. The auditing judge in his opinion dismissing exceptions stated in a footnote (R. 120a) his belief that there is "a strong probability" that the contract right was what the testator intended to pass on to the exceptant. He did not make this a finding, however, and we express no view on the subject.

at the time he made his will and did not own it at death. While, as the court below suggested, the testator may have meant the devise to cover his contract right with respect to the land, the appellant does not make that claim, and it is not before us. Whether the mortgage that appellant does claim, acquired by the testator shortly before death with borrowed funds, is or is not an "interest in land" for purposes of this case we need not decide, for in any event it was not contemplated when the will was written and was not "[held] with Roy Kepner." It was thus after-acquired property which, as the court below properly found, formed part of the testator's residuary estate. See 20 Pa.C.S. § 2514(2) (1975).

We conclude that appellant took nothing by the testator's will, and therefore affirm the decree below. Each party to bear own costs.

It is so ordered.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. The majority has done a beautiful job of weaving one technicality after another into a tapestry of injustice lacking in both reason and common sense.

In the second paragraph of his will testator left an undivided interest in land to appellant. It is well-settled that a will speaks *as of the time of death,* and at the time of his death testator had an interest in the land as he described. Moreover, it is also well-settled that all parts of a will are to be given effect if reasonably possible. Testator, without any question, made a testamentary gift to appellant, and at the time of his death he possessed exactly that which he gave to appellant. We should give effect to that gift.

The majority states that appellant claimed that a specific devise of the property had been made to her. That was not her claim. The judge of the court of common pleas properly analyzed the issues in his opinion denying the executors' preliminary objections. The judge stated:

"The executors argue that the mortgage did not pass under paragraph two because the testator intended to dispose of real estate only under this provision. They cite various authorities in support of the contention that a mortgage is personalty. The executors conclude that since the testator never owned the real estate described in paragraph two, the gift to Mrs. Caldwell must fail.

"There is no doubt that a mortgage is personalty. *Gallagher, Admr. v. Rogan,* 322 Pa. 315 [185 A. 707] (1936); *Sweeny v. Horn,* 190 Pa. 237 [42 A. 709] (1899); *Handley's Estate,* 181 Pa. 339 [37 A. 587] (1897); *Eldredge v. Eldredge,* 128 Pa.Super. 284 [194 A. 306] (1937). However, this is not dispositive of the issue at hand. While a 'bequest' is, strictly speaking, a gift by will of personal property and while 'devise' signifies a disposition of real estate by Will, a departure from the precise use of the terms 'bequeath' and 'devise' will not invalidate either a bequest or a devise. *Fleck v. Harmstad, et al., Kingsley,* 304 Pa. 302, 308 [155 A. 875] (1931). Thus, even though the mortgage is personal property, the gift need not fail merely because the testator used the wrong magic words.

"Mrs. Dorothy Caldwell argues that the testator did not intend to dispose of any real estate in paragraph two, but that he intended to dispose of only his interest in the real estate. She submits that 'regardless of what that interest is or what it is called' the testator intended to pass it to her.

"In addition, Mrs. Caldwell contends that since a mortgage is a conveyance between the mortgagor and mortgagee, it is a real property interest. She cites *Bulger v. Wilderman and Pleet,* 101 Pa.Super. 168 (1931) in support of this contention.

"In *Bulger,* the court discussed the legal relationship between the mortgagee and mortgage and stated on page 175:

Thus we perceive *an interest or estate in the land itself,* capable of enjoyment, and enabling the mortgagee to grasp and hold it actually, and not a mere lien or poten-

tiality, to follow it by legal process and condemn it for payment. (Emphasis added)

"Mrs. Caldwell also cites *Randall [Randal] v. Jersey Mortgage Inv. Co.,* 306 Pa. 1 [158 A. 865] (1932), where it is stated on page 5:

While ordinarily, as to third parties, a mortgage may be only a security for the debt specified in the accompanying bond, it is, as to the mortgagor and mortgagee, and those claiming under and through them, a conveyance of land,

. . . .

"Whatever merit there may be in the contention that William B. Taylor held a real property interest by virtue of his ownership of the mortgage, it is immaterial. As the executors point out in their brief, Mrs. Caldwell does not claim under or through the mortgage as a mortgagee. She does not seek to enforce the rights of a mortgagee. She is merely claiming the mortgage as a bequest made by the testator. Therefore, the cases cited above do not support her position that paragraph two was a devise of a real property interest. To a beneficiary of a Will, a mortgage is personal property.

"The real concern here, is what interest did William B. Taylor intend to convey to Dorothy Caldwell. It is appropriate to start with an analysis of what the testator meant when he referred to his 'interest in land' in paragraph two. As mentioned above, the Executors assert that this necessarily refers to a real property interest.

"*Bulger,* supra, however, states that a mortgagee has 'an interest or estate in the land itself', at least insofar as a mortgage acts as security for debt. *Britton's Appeal,* 45 Pa. 172 (1863) supports this conclusion. There, the court stated at page 177: 'They (mortgages) are in form defeasible sales, and in substance grants of specific security, or interests in land for the purpose of security.'

"Further support for the proposition that a mortgage is an 'interest in land' may be found in the Restatement, Property, sec. 9 (1936). After excluding a mortgage from the

definition of an 'estate', comment (c) states, in part: '[W]hen a mortgagee has a lien on land for his repayment, he has an interest in land . . . . '

"The above authorities reveal that although a mortgagee does not have a real property interest, he does have an interest in real property. In other words, a mortgagee does not have an 'estate' in the incumbered land, as that term is generally used in real property law, but he does have ties to the real estate in that the real estate serves to secure the debt.

"Having concluded that a mortgagee does have an interest in land, the question of what interest William B. Taylor intended to convey in paragraph two remains.

"The Executors point out that the testator did not own the mortgage in question at the time he executed his Will. They contend that it follows that it would be unreasonable to conclude testator intended to dispose of the mortgage in his Will. However, they argue that the testator intended to dispose of real property under the provision in question.

"The weakness in this argument is that the testator did not own any real estate in Ohio at the time he executed his Will, or thereafter, for that matter. The Executors are aware of this fact. Nevertheless, they urge this court to speculate that Mr. Taylor may have mistakenly concluded that he owned 'an undivided interest in land there owned by Kepner (the true owner) or anticipated purchasing an undivided interest therein.' This the court will not do.

"In ascertaining the intention of the testator, his Will is to be construed as of the date of its execution. *Whiteside's Estate,* 302 Pa. 452 [153 A. 728] (1931). As to a Will's effect and operation, it speaks as though executed immediately prior to death. *Braman's Estate,* 435 Pa. 573 [258 A.2d 492] (1969).

"A testator's intent, unless unlawful shall prevail and that intent shall be gathered from a consideration of the language of his Will, his scheme of distribution, the surround-

ing circumstances at the execution of the Will and the existing facts. It is only when the will is ambiguous or conflicting or the testator's intent is uncertain that the court will resort to the canons of construction. *Carter Estate,* 435 Pa. 492 [257 A.2d 843] (1969); *Houston Estate,* 414 Pa. 579 [201 A.2d 592] (1964).

"An uncertainty does exist. Paragraph two attempts to dispose of testator's 'interest in land' located in Ohio. As mentioned earlier, testator did not own any land in Ohio either before or after he executed his Will. Furthermore, testator did not own the mortgage interest when the will was executed. He acquired this interest afterwards. Thus, this court is required to resort to rules of construction to interpret this Will.

"A bequest is to be given effect when possible. As stated in *Little Estate,* 403 Pa. 247, 255 [168 A.2d 738, 742] (1961): 'If there be any doubt, a testator is presumed to intend the meaning which makes his gift legally effective rather than one which renders it nugatory and void.'

"Also, a construction of a Will which renders every word operative is to be preferred to one which makes some words and sentences idle and worthless. *Hollenbaugh Estate,* 402 Pa. 256 [167 A.2d 270] (1961).

## CONCLUSION

"Keeping in mind that a Will speaks at a testator's death, *Braman's Estate,* supra, paragraph two of testator's Will must be construed as having passed the mortgage to Mrs. Caldwell. At the time he died, testator owned the mortgage in question. Paragraph two gave Dorothy Caldwell testator's 'interest in land' located in Ohio. As concluded above, though a mortgage is personal property, is is an 'interest in land.' This was the only interest testator ever had in said land."

I agree with this analysis and therefore dissent.