# Rice, Appellant, *v.* Braden.

*Equity—Averments of bill—Trusts ex maleficio—Fraud—Res adjudicata—Release—Statute of limitations—Demurrer—Acts of October 13, 1840, P. L. 1, and April 22, 1856, P. L. 532.*

1. Fraud is never to be presumed but must be proved; a bill in equity averring the legal conclusion that an act was fraudulently done or representation fraudulently made, but without clearly and explicitly setting out the facts which constitute the alleged fraud so that the court can judge whether the act or representation complained of was fraudulent or otherwise, will be held insufficient on demurrer.

2. Where a court of competent jurisdiction has passed upon a question in which different parties are interested, the decree of such court is conclusive against all parties to the controversy who had a right and an opportunity to be heard until reversed or opened. What rights, if any, the parties who claim to be injured thereby have, can be asserted only on appeal from the decree entered, or by petition for a bill of review filed in the court entering the decree.

3. A release executed for a valuable consideration by the heirs of a decedent relinquishing to other parties all rights to a share in the property of the decedent is conclusive against such heirs and all claiming under them where it does not appear that deceit was practiced in securing the release.

4. A bill in equity to establish a trust ex maleficio is demurrable where it appears from the bill that the alleged fraud was or ought to have been discovered more than five years before the filing thereof. The Acts of October 13, 1840, P. L. 1, and April 22, 1856, P. L. 532, constitute a bar to relief in such case.

5. A woman who has cohabited with a decedent for thirty years and the sons whom she has borne to him during that period, and whom the decedent has recognized as such, have a standing to claim his estate where it appears, that during the period decedent had recognized the woman as his wife and advertised her to the world as such; that he had maintained a common home with her, and that she had aided him in accumulating his property. Such persons commit no fraud on the Orphans' Court in prosecuting their claim, or in failing to disclose facts which if presented, would defeat their recovery.

6. A bill in equity alleged that plaintiffs were the heirs at law of a decedent who had died more than twenty-one years before the filing of the bill; that decedent had cohabited for many years with a woman therein named by whom he had had five children; that this woman had a husband living at the time of decedent's death from whom she had never been divorced; that she and her sons by representing that she was the wife of the decedent had secured possession of his estate by a decree of the Orphans' Court; that with the money of the estate she immediately thereafter had fraudulently obtained from decedent's heirs, through whom plaintiffs claimed, a release of their interest in the estate; and that defendants were in possession as legatees and devisees under the will of this woman. The bill prayed that defendants be required to hold the property in their possession in trust for the plaintiffs. No facts constituting fraud in the proceedings in the Orphans' Court, or in the procuring of the release were alleged, and it appeared that the plaintiffs, or those under whom they claimed, knew or should have known of all the transactions complained of more than five years before the filing of the bill. A demurrer was sustained by the lower court, and the bill was dismissed. Held, no error.

Argued Oct. 17, 1913. Appeal, No. 260, Oct. T., 1913, by plaintiffs, from decree of C. P. Washington Co., No. 2129, in Equity, sustaining demurrer to a bill to declare a trust, in case of Maggie A. Rice, Peter Kane, Daniel Kane, Owen Kane, John Bellew, Malachy Bellew, Joseph Bellew and Bernard Bellew, v. Anna Braden and O. D. Bleakley, Trustee under the last will and testament of Sara McKeown (so calling herself) now deceased. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity to declare defendants' trustees ex maleficio.

The facts appear by the following opinion of Mc-ILVAINE, P. J., sur defendants' demurrer to plaintiffs' bill:

John McKeown died on February 8, 1891, at his residence in the Borough of Washington, Washington County, Pennsylvania. He died intestate and left a large estate consisting of personal property and real estate valued at between one and two million dollars. Letters of administration were issued to M. C. Acheson, Esq., who settled and distributed the personal estate under the direction of the Orphans' Court of this county. On distribution the Orphans' Court decreed the personal estate to Sara McKeown as widow, and to Arthur Mc-Keown, Byron McKeown, John McKeown, Scott A. Mc-Keown and James B. McKeown as sons of John McKeown, who each received and receipted for his and her share. Sara McKeown and the five sons also went into possession of his real estate immediately after John McKeown's death, claiming to be the legal owners thereof. On November 27, 1910, Sara McKeown died testate, and Anna Braden, the defendant, and daughter of Sara McKeown and John C. King who was her husband before she lived with John McKeown as his wife, was made a beneficiary under her will, there being left to her large sums of money and property which are now in the possession of the said Anna Braden as the legatee under the will of her said mother. Before her death, Sara McKeown, by the death of three of her sons intestate, took the property and interest which the said three sons took in the estate of the said John McKeown. John McKeown when he died left two sisters in Ireland to survive him, Catherine Kane and Anna Bellew. They died some years ago intestate, and the plaintiffs in this suit are their sons and daughters. Shortly after the death of John McKeown, Sara McKeown, his reputed wife, and her son, Arthur, with an attorney, visited the

sisters of John McKeown in Ireland and obtained from them a release and assignment of their interest in the estate of their brother John McKeown. The consideration of the release and assignment was the payment of the sum of $11,000 and the building of a dwelling house for said Anne Bellew, and the $11,000 and the money used in building the house was paid out of the money that came to Mrs. McKeown and her sons out of the estate of John McKeown from the administrator when he made distribution under the order of the Orphans' Court of this county.

John McKeown some thirty years before his death formed sexual relations with and cohabited with Sara King who at the beginning of that cohabitation took the name Sara McKeown, her former name being Sara King, and during those thirty years bore him five sons whom the Orphans' Court recognized as his heirs at law. John C. King, Sara McKeown's first husband, at the time this cohabitation between John McKeown and Sara King first took place and while it continued, was alive and not divorced from his said wife, nor was she divorced from him. Notwithstanding John C. King was living (to use the language found in the brief of the plaintiffs' counsel) "for thirty years John McKeown held Sara King out to the world as his wife; she carried his name and was known everywhere as his wife. She bore him five children who bore his name and were everywhere known as his sons. After his death and down to her own death she kept up the deception and even signed her last will and testament as Sara McKeown."

On November 11, 1912, (21 years and 9 months after the death of John McKeown) the plaintiffs as the heirs at law of Catherine Kane and Anne Bellew, filed the bill in this case alleging that Sara McKeown was not the widow of John McKeown and that Anna Braden is a trustee ex maleficio of all the property she now possesses, because she received it from her mother who received it from the estate of John McKeown, or if the property she

now possesses was not all received from Sara McKeown, it is property which was bought with money which when traced back came from John McKeown's estate and passed to her under the will of her mother, and was money which at the time of and immediately after the death of John McKeown legally belonged to Catherine Kane and Anne Bellew, the ancestors of the plaintiffs.

The principal prayer of the bill is that the court order, adjudge and decree that all and singular the moneys, securities and property, real, personal and mixed, paid to, received by or acquired by the said Sara King, or by her sons Arthur, Bryon J., John, Scott A., and James B., out of or from the estate of the said John McKeown were paid to, received by and acquired by them and ever afterwards held by them in trust solely for Catherine Kane and Anne Bellew, the said two sisters of John McKeown and their heirs, including the plaintiffs in this case.

To this bill Anna Braden demurred, and prays first, the judgment of the court whether she shall be compelled to make any further or other answer to the bill of the plaintiffs; and second, that she be dismissed with her reasonable costs in this behalf sustained.

In disposing of a demurrer, all facts properly pleaded in a bill in equity must be taken as true. Applying this rule to this case, it must be taken as true. First, that John McKeown resided and died in this county, intestate, on February 8, 1891, and that he left a valuable estate worth about one and a half million dollars, and that letters of administration were issued upon his personal estate and that the administrator settled and distributed said personal estate under the supervision of the Orphans' Court of Washington County. Second, that at the time of John McKeown's death he left surviving him two sisters who resided in Ireland, Catherine Kane and Anne Bellew, and that they, under the laws of Pennsylvania, were his only heirs at law if he died unmarried and without legal issue. Third, that John Mc-

Keown took up with Sara King who then had a husband, John C. King, living, and for thirty years prior to his death lived with her and recognized her to the world at large as his wife, and that she bore to him five sons, and that when she commenced to live with him and ever afterwards she called herself and was known as Sara McKeown, the wife of John McKeown, and that she and her sons made claim to his estate before the Orphans' Court of Washington County and in pursuance to a decree of the Orphans' Court of Washington County received his entire estate. That Arthur McKeown, John McKeown and Byron J. McKeown each died intestate and without issue, and that Sara McKeown, their mother, inherited the money which they received from the estate of the said John McKeown, and that John C. King was still living and undivorced at the time of the death of the said John McKeown. Fourth, that shortly after said Sara McKeown and her sons had received the personal estate in distribution from the administrator thereof, she obtained from Catherine Kane and Anne Bellew a release and assignment of all their interest in the estate of their brother, the said John McKeown, and that she paid to each of said sisters a valuable consideration for said release and assignment, to wit, $11,000 and the money which it cost to build a house for the said Anne Bellew.

In passing upon the sufficiency of a bill in equity all the facts which are not denied and which, in order to make out the plaintiffs' case, should be denied, are also to be taken as true. Applying this rule to the facts in this case, it must be taken as true in disposing of this demurrer: First, that M. C. Acheson, the administrator, in settling and distributing this estate, complied with all the requirements of the laws of Pennsylvania, and did all things which were necessary in order to make a legal and valid settlement and distribution of said estate, and that the Orphans' Court of Washington County had jurisdiction of the settlement and distribu-

tion of said estate, and that any decree of distribution which said court made was legal. Second, that Catherine Kane and Anne Bellew at the time they executed and delivered the release and assignment of their interest in the estate of John McKeown were satisfied with the consideration that they received for making said release and assignment, and that they remained satisfied with the same until the time of their death and never made any effort to have the same cancelled or revoked, and never claimed that because the money which they received was money which Mrs. McKeown received from the estate of John McKeown, therefore said release and assignment was a nudum pactum, but rather recognized the transaction between them and Mrs. McKeown as a compromise between adverse claimants in which they received a certain proportion of the estate and the other party retained the balance which was then in her possession under the decree of the court. Third, that no bill was filed in this case until November 11, 1912, and that the plaintiffs never claimed that the property now in the hands of Anna Braden was held in trust for them and their ancestors until three months before said bill was filed, and never claimed until three months before November 11, 1912, that their ancestors, Catherine Kane and Anne Bellew, had an interest in the estate of John McKeown at the time of their death.

It is clear from these facts that between the plaintiffs and a successful claim to this property named in the bill there stand three barriers that this court is asked to remove. First, a decree of the Orphans' Court of this county awarding the property in question to Sara McKeown and her sons, whose claim thereto was necessarily adverse to that of Catherine Kane and Anne Bellew, the collateral heirs of John McKeown. Second, a release and assignment of Catherine Kane and Anne Bellew of all their right, title and interest in the personal and real estate of their brother, John McKeown, to the said Sara McKeown. Third, the statutes of re-

pose or limitation found in the Act of October 13, 1840, P. L. (1841) 1, and the Act of April 22, 1856, P. L. 532.

Unless these barriers can be removed by the court, it is clear that the plaintiffs' claim to the property in question is invalid. The plaintiffs' general prayer for relief therefore in effect includes three special prayers. First, that this court adjudge the decree of the Orphans' Court making distribution of the personal estate of John McKeown, null and void; second, that it decree that the release and assignment of Catherine Kane and Anne Bellew, presumably recorded in all the counties in which the real estate of John McKeown was situated, is a nudum pactum and therefore invalid; third, that the Acts of 1840 and 1856 are inoperative so far as this case is concerned.

There is no doubt of the general proposition that whenever a person has obtained the property of another by fraud, he is a trustee ex maleficio of the person so defrauded. The reason of it is this: Having perpetrated a fraud and by means thereof obtained the property of another, equity will not permit him to enjoy the fruits of his fraud, but will hold him to be a trustee for the rightful owner. He is not of course a trustee of the title, for that he never acquired, but of the thing which he has in manual possession. Such cases are not technically trusts but are trusts ex maleficio, or trusts resulting from the fraud practiced by the one who has possession of the property. Fraud arises sometimes out of the abuse of a confidence, and that abuse of confidence is the grounds of decreeing a trust ex maleficio. But nothing of that kind arises in the case at bar, for the reason that no confidential or fiduciary relation existed between Sara McKeown and Catherine Kane and Anne Bellew. On the contrary, they were adverse claimants to the same estate and dealt with each other at arms length; and this being the case, the fraud that is to be made the basis of a decree in this case is actual fraud. Such fraud is never to be presumed but must be proven, and in averring

it in a bill of complaint it is not sufficient to aver the legal conclusion that an act was fraudulently done or representation fraudulently made, but the facts which constitute the fraud must be clearly and explicitly set out, so that the court and not the pleader may judge whether the act or representation complained of was fraudulent or otherwise.

Again, it is well established that where the decree of a court of competent jurisdiction has passed upon a question in which different persons are interested, such decree is conclusive against all parties to the controversy who had a right and an opportunity to be heard.

In the case at bar the Orphans' Court which decreed the personal property of which John McKeown died possessed, had jurisdiction of the settlement and distribution of his estate and notice of the settlement and distribution of that estate was presumably given as provided by law to all parties interested in the estate, including the ancestors of the plaintiffs. They did not appear. Still the court had jurisdiction both of the subject matter and of the persons who had notice to appear, whether they appeared or not. Mrs. McKeown and her sons did appear, and the balance in the hands of the administrator was decreed to them.

It must be admitted that the decree of distribution thus made by the Orphans' Court was erroneous, taking the allegations of the plaintiffs' bill to be true; but the remedy for an erroneous judgment is an appeal to a higher court or a petition before the lower court for a bill of review. But the time to take advantage of these remedies passed and Catherine Kane and Anne Bellew died without questioning the validity of the decree of the Orphans' Court. This being the case, the decree of distribution as we view it is binding upon Catherine Kane and Anne Bellew and their heirs at law, unless it can be shown, that it was null and void from the beginning and therefore was not in a legal sense a decree; or, in other words, was so permeated with fraud that this court can

in good conscience set it aside because it always was a nullity.

The only allegation of fraud in the bill which relates to this decree is as follows: "That at the time of the death of the said John McKeown, the said Sara King and the said Anna Braden, then Anna King, well knowing that the said Sara King was the lawful wife of John C. King and that he was still living and undivorced and that she, the said Sara King, was not and could not be the widow of the said John McKeown, wrongfully, falsely, fraudulently and against the laws of this Commonwealth and with the intention of cheating and defrauding the two said sisters of John McKeown out of their interest in the estate and property left by him, represented and declared to the Orphans' Court of Washington County, Pennsylvania, that she, the said Sara King, was the lawful widow of the said John McKeown and entitled to her interest as such in his estate, and that the said Arthur, Byron J., John, Scott A., and James B. were his lawful heirs and entitled as such to their respective shares or interest in the estate of which he died seized; when in truth and fact the said Sara King and Anna Braden well knew that the said Sara King was not the lawful widow of John McKeown and that the said five sons were natural ones only and illegitimate, and could not inherit his estate."

Does this averment set forth such a fraud as would justify a court of equity in setting aside a decree of the Orphans' Court which appears to be regular on its face, without any further facts being presented to show how the alleged fraud was perpetrated upon the court? We think not. Mrs. McKeown and her sons were not in a position of rank outsiders or fraudulent claimants. For thirty years she had been the common law wife of John McKeown; he had recognized her as such; she had aided him during these years in accumulating the fortune that he left, or at least was his helpmate when he was accumulating the fortune. She had borne to him

five sons, and the relation of husband and wife and father and mother to these children, and the mainte- nance of a home as husband and wife, together with the fact that John McKeown advertised to the world that she was his wife, gave her a standing to present her claim as a common law wife to a share in his estate, and gave to the sons of her and John McKeown the same right. Again, in presenting that claim she practiced no deceit upon Catherine Kane or Anne Bellew. Under the laws of the Commonwealth of Pennsylvania they had the same notice that she had that a third party was settling this estate and was about to distribute the same under the laws of the Commonwealth of Pennsylvania. The sisters had constructive notice at least that if they wished to contest the right of Sara McKeown and of the five sons who claimed to be lineal heirs, they could do so; the court was open to them; and they having failed to appear either at the original hearing or having failed to appear for five years to ask that the decree made by the court be opened, it strikes us that it would be in- equitable for this court to disturb the decree of the Orphans' Court on the simple allegation, which is in the nature of a conclusion of law, that Sara King fraudu- lently imposed upon the court when she made the claim that she was the wife of John McKeown and withheld the fact, of which she had knowledge, that her husband John C. King was still alive.

Courts are open to all claimants, and certainly it was not fraud on the court for Mrs. McKeown and her sons to appear before the auditor appointed to ascertain heirs and make distribution of the balance in the hands of the administrator and submit their claim for his decision. It was not a fraud on the court for them to employ a lawyer to skillfully present the facts that were favor- able to their claim, leaving it to an adverse claimant, if any there were, to bring out the facts that were unfavor- able to their claims. If she proved by competent wit- nesses the facts which are not denied in the bill, that for

thirty years John McKeown recognized her as his wife and held her out to the world as such, and that she bore to him as her husband five sons whom he recognized as his sons, she made out a prima facie case, and if no other claimant appeared the auditor could legally find that they were entitled to the money for distribution, and the court would, if no exceptions were filed to his finding within the time given for filing exceptions, properly make a decree of distribution in accordance with such finding. The bill of the plaintiffs is perfectly silent as to how Mrs. McKeown attempted to establish her claim and that of her sons. The complaint of the bill is that she, knowing what she did, that is that John C. King was alive, perpetrated a fraud on the court by coming into court with such a claim. This clearly is not a fraud on the court. She and her sons had a colorable title to the estate to be distributed, and after five years had passed in which a bill of review could have been filed, we hold that fraud such as is necessary in a court of equity to set aside a decree of the Orphans' Court that had been made for over twenty years, is not well pleaded in the plaintiffs' bill.

Neither are there facts sufficiently pleaded in the plaintiffs' bill to justify the court in decreeing the release and assignment made by Catherine Kane and Anne Bellew a nudum pactum and therefore null and void. As we have already said, Sara McKeown sustained no confidential or fiduciary relation to the sisters of John McKeown. The facts show that she was an adverse claimant with color of title to the estate of John McKeown. The facts further show that these sisters must have known that when Mrs. McKeown and her attorney approached them to obtain a release and assignment of their interest in his estate, she was an adverse claimant; and they certainly knew that John McKeown was dead, and did know or could have known that M. C. Acheson, an outside party, was the administrator of his estate; and the fact that they acquiesced in the release and as-

signment until their death and never during the five years that the law gives them to file a bill of review made any move in that direction, is conclusive evidence that those who might have successfully contested the claim of Sara McKeown and her sons never did so, and the presumption must prevail that their release and assignment given to Mrs. McKeown and their receipt of the money from her was a compromise between adverse claimants to an estate and therefore not a nudum pactum but a compromise contract supported by a valuable consideration.

This brings us to another phase of this case, and that is the question of laches. When this bill was filed by the plaintiffs (who never were the heirs at law of John McKeown) twenty-one years and nine months had passed since the estate of John McKeown came into the hands of those who are now in the possession of it. The real estate of which he died seized was entered upon under a claim of title and under a color of title by the McKeowns as heirs at law of John McKeown, and they have held it ever since under that claim adversely to the plaintiffs and their ancestors. Mrs. McKeown and those to whom she bequeathed her personal estate have also held the personal property from the time the estate was distributed up to the present time, over twenty years. This property has changed its character. And even if what the plaintiffs have set up as a fraud was a fraud sufficiently averred, still we have the Act of 1840 and then the Act of 1856, which expressly provide that no trust ex maleficio shall be declared after five years from the fraudulent act if known, or five years after it is discovered or ought to have been discovered. Catherine Kane and Anne Bellew over twenty years ago were informed of the death of their brother. They knew, or were supposed to have known, that they as his sisters were entitled to his estate as collateral heirs if he left no legal wife or legal issue. It was their duty to investigate whether or not they had any rights in his estate. They were put upon notice, and shortly after his death

they were approached by one who by the very request to purchase their interest in the estate showed that she was an adverse claimant to the estate, and notwithstanding that, they gave the release and assignment and never during their life questioned it, and their children never questioned it until within three months of the time they filed their bill, and why they then questioned it is not made apparent by the pleadings; or, in other words, no satisfactory explanation of the delay is pleaded by them. Again, it was impossible for Sara McKeown to conceal the fact that her former husband, John C. King, was alive. The fact that he was alive would be just as apparent to every person with whom he came in contact as it would be to her, and she therefore did not have knowledge of a fact which Catherine Kane and Anne Bellew could not have discovered from other sources just as well as from her; and further, she was under no obligation to reveal to them the fact that he was alive, as she maintained no confidential relation and owed no duty to them that would require the revealing of such a fact. Clearly they have delayed so long the time for invoking the aid of a court of equity, that it would be inequitable to grant the relief for which they now pray.

The court sustained the demurrer and dismissed the bill. Plaintiffs appealed.

*Error assigned* was the decree of the court.

*Owen C. Underwood,* with him *W. S. Maxey* and *R. H. Meloy,* for appellant.

*John C. Bane,* with him *James P. Braden,* and *A. G. Braden,* of *Braden & Campbell,* and *J. M. Dickson,* for appellees.

PER CURIAM, January 5, 1914:

The decree of the Court of Common Pleas sustaining the demurrer and dismissing the plaintiff's bill is affirmed on the opinion of Judge McILVAINE.