477 A.2d 473

In re ESTATE of A. Carolyn SCHOFIELD, a/k/a A. Carolyn Bauman, a/k/a Anna C. Bauman, a/k/a A.C. Bauman, a/k/a Anna C. Schofield, a/k/a A.C. Schofield.

Appeal of Lawrence F. HITCHON.

Supreme Court of Pennsylvania.

Argued March 6, 1984.

Decided June 29, 1984.

Reargument Denied Oct. 1, 1984.

96

Peter Suwak, Washington, for appellant.

Jerry B. Landis, Pittsburgh, for Eutimo R. Vitullo, Executor.

Kenneth Lewis, Baskin & Sears, Pittsburgh, for heirs of the estate.

## OPINION ANNOUNCING JUDGMENT
## OF THE COURT

PAPADAKOS, Justice.

This is the appeal of Lawrence F. Hitchon (Appellant) from the per curiam order of the Superior Court, *In re: Estate of Schofield, etc.,* 306 Pa.Superior Ct. 584, 453 A.2d 22 (1982), affirming an Order of the Court of Common Pleas of Allegheny County, Orphans' Court Division, entered on December 3, 1980, by the Honorable Nathan Schwartz. That order dismissed objections of Appellant to the First and Final Account of Eutimio R. Vitillo, Executor of the Estate of A. Carolyn Schofield, deceased (decedent).

Decedent died testate on January 2, 1979, and by her Last Will and Testament executed on March 22, 1969, devised to her nephew (Appellant) her one-half interest in and to certain real property in New Stanton, Hempfield Township, Westmoreland County. Her residuary estate, after other pre-residuary gifts, passed in equal shares to Appellant and ten other residuary legatees. A codicil dated October, 1970, reaffirmed these gifts. The record reveals that at decedent's death she did not own the New Stanton property, having conveyed her interest on July 28, 1976 to Antonio and Rose Josephine Pagano. At decedent's death, it was discovered that her share of the proceeds of the sale (approximately $127,000.00) had been commingled with other funds and was in her husband's (Harry L. Schofield) possession. The executor instituted an Equity action against the husband, alleging that he misappropriated the sale proceeds for his own use. The Executor ultimately recovered the full amount claimed, less attorney fees, and included this net recovery of $99,500.00 in his Petition for Distribution,

recommending that it be distributed among the eleven residuary legatees.

At audit, Appellant filed objections to the Petition for Distribution, claiming the balance of the sale proceeds as his own. The Executor argued that since Appellant's specific devise was sold prior to decedent's death, the gift was adeemed. The trial court agreed with the Executor and dismissed the objections by its order of December 3, 1980. Exceptions to that order were dismissed by a Court en banc and Superior Court affirmed. This appeal followed.

Before us, Appellant advances the same arguments presented to the trial court and Superior Court in support of his claims over the sale proceeds. Appellant first argues that he can reach the balance of the recovered proceeds pursuant to 20 Pa.C.S. Section 2514(16.1). That section provides as follows:

### Non-Ademption; Incompetency

If property of an incompetent specifically devised or bequeathed is sold or exchanged or if a condemnation award or insurance proceeds are paid to the Estate of an incompetent as a result of condemnation, fire or casualty, the specific legatee or devisee has the right to the net sale price, the property received in exchange, the condemnation award or the insurance proceeds. This paragraph does not apply if subsequent to the sale, exchange, condemnation or casualty, the Testator has been adjudicated competent and survives the adjudication by one year.

Appellant argues that this Section covers all situations where an incompetent testator's property is sold, irrespective of whether or not the testator was judicially adjudged to be incompetent prior to his death. Furthermore, Appellant argues that this Section would permit him to introduce evidence in a post-mortem proceeding to establish the decedent's incompetence at the time of the sale. Appellant bases these arguments on a comparison of the current 20 Pa.C.S. Section 2514(16.1) with former 20 Pa.C.S. Section 2514(16) which provided prior to July 9, 1976 as follows:

> Ademption. A specific devise or bequest shall not be adeemed where the Testator or the Testator's Estate receives an asset in exchange for the subject of the devise or bequest and the act which otherwise would have caused the ademption occurs while the Testator is an adjudged incompetent. In such case the devise or bequest shall be deemed to apply to whatever was received in exchange.

Appellant places great emphasis upon new Section 2514(16.-1), wherein the Legislature substituted "adjudged incompetent" for "incompetent," and suggests that the deletion of the single word "adjudged" is of particular significance. We disagree.

Section 2514(16.1) is derived from the Uniform Probate Code, Section 2–608, Nov. 2–608(b)[1] which contains the following language:

> If specifically devised property is sold by conservator or if a condemnation award or insurance proceeds are paid to a conservator as a result of condemnation, fire or casualty, the specific devisee has the right to a general pecuniary devise equal to the net sale price, the condemnation award, or the insurance proceeds. This subsection does not apply if after the sale, condemnation or casualty, it is adjudged that the disability of the Testator has ceased and the Testator survives the adjudication by one year...

Our comparison of the Uniform Probate Code and Section 2514(16.1) leads us to conclude that our statute provides for exactly the same elements as does the Uniform Probate Code with only one difference. The Uniform Probate Code language refers to a "conservator," the use of which clearly implies that a formal adjudication of incompetency has occurred prior to death. Although our Section 2514(16.1) does not refer to "guardians" or "conservators," it concludes with the sentence "this paragraph does not apply if subsequent to the sale, exchange, condemnation, or casualty, the Testator has been adjudicated competent and sur-

1. See Official Advisory Comment to 20 Pa.C.S. Section 2514(16.1).

vives the adjudication by one year." Since only an adjudged incompetent can be subsequently adjudged competent, it is clear that the legislative intent was not to change the former provision of 2514(16) and thus create a new proceeding in which the Court would be compelled to make an adjudication of competency or incompetency *after* the death of the Testator. Our reading of this Section as a whole convinces us that its scope encompasses only formal pre-death adjudications of incompetency.

Both Sections as their chief purpose seek to soften the inflexible rule of ademption where specific devises are destroyed during periods of the testator's officially declared incompetency. In furtherance of that end, both sections establish a rule avoiding ademption where specific devises are destroyed by sale, condemnation, or act of God at a time when the affairs of the testator are formally in the hands of a court appointed guardian. Each section specifically provides for its inapplicability where an adjudication of competency is made and the testator survives for a one year period.

The comments to Section 2514(16.1) do not mention any radical difference in our Section from the Uniform Probate Code Section; to the contrary, they are indicative of legislative intent to adopt in total the construction as framed by the drafters of the Uniform Probate Code.

The trial court, in a well reasoned opinion, was also of this view and further observed that our Probate Code makes no distinction between incompetents and *adjudicated* incompetents, (See Sections 5505, 5512, 5522, 5524, and 5525), nor does it anticipate post-mortem adjudications of incompetency. (See Sections 5511(a), (c)). All of these sections indicate a consistent use of "incompetent" in our Probate Code which carries over into Section 2514(16.1).

■ It is our view that the Legislature, by this section, intended to ameliorate the inflexibility of the ademption rule only in situations of pre-death judicial adjudications of incompetence and not in situations where no pre-death determination had been made. The striking similarity of our

statute with the Uniform Probate Code convinces us of this, as does our examination of this section with other sections of our Code which consistently apply the term "incompetent" to pre-death adjudications. We see no reason why Section 2514(16.1) should be interpreted differently.

■ Our Legislature recognized that ademption was particularly harsh "where the alienation of the property was at the direction of the guardian of an incompetent testator. In such cases a specific legatee or devisee was subject to the possibility of favoritism which guardians might be inclined to exercise among named beneficiaries of the incompetent." *In re: Estate of Fox,* 494 Pa. 584, 431 A.2d 1008 (1981). Since the testatrix was not adjudged an incompetent prior to her death, Section 2514(16.1) is not available to Appellant in his attempt to reach the sale proceeds.

Appellant also argues that the sale of the specific devise was induced by fraud, and that fraud or undue influence practiced upon a decedent causing the sale of such specific devise should not work an ademption where the proceeds are preserved and traceable.

■ It has long been the law in this jurisdiction that a specific legacy or devise is extinguished if the property is not in existence or does not belong to the testator at the time of his death. *Nakoneczny Estate,* 456 Pa. 320, 319 A.2d 893 (1974); *Soles Estate,* 451 Pa. 568, 304 A.2d 97 (1973); *McFerren Estate,* 365 Pa. 490, 76 A.2d 759 (1950); *Horn's Estate,* 317 Pa. 49, 175 A. 414 (1934); *Harshaw v. Harshaw,* 184 Pa. 401, 39 A. 89 (1898); *Hoke v. Herman,* 21 Pa. 301 (1853); *Blackstone v. Blackstone,* 3 Watts 335 (1834). This rule is equally applicable where the specific devise is removed from the testator during his lifetime by fraud, an involuntary act, or by operation of law. *Harshaw v. Harshaw, Pleasant's Appeal,* 77 Pa. 356 (1875); *Blackstone, Humphreys v. Humphreys,* 2 Cox 184, 30, English Reporter 85 (1789); *Partridge v. Partridge,* 1 Talbot 226, 25 English Reporter 749 (1736).

In these cases the Courts have consistently avoided inquiring into the testator's intent when the specific devise is not part of the estate at death because

the idea of discussing what were the particular motives and intention of the testator in each case, in destroying the subject of the bequest, would be productive of endless uncertainty and confusion ... and though the Court might be lucky enough occasionally to hit the testator's intention it is in point of precedent a very dangerous sort of refinement, and would in nine cases out of ten lead to great confusion and embarrassment.

*Humphreys,* 185–186.

▉ Whether the rigid rule of ademption in cases of purported fraud ought to continue as the law in this Commonwealth is certainly a most important proposition, but with this record we decline to reach the merits of Appellant's argument. Even if we were to endorse Appellant's position it would be non-productive, since he did not plead fraud with specificity as required by Pa.R.C.P. 1019(b) which states that: "averments of fraud or mistake shall be averred with particularity." Averments of fraud are "meaningless epithets unless sufficient facts are set forth which will permit an inference that the claim is not without foundation or offered simply to harass the opposing party and to delay the pleader's own obligation." *Bata v. Central-Penn National Bank of Philadelphia,* 423 Pa. 373, 224 A.2d 174 (1966). In satisfaction of the particularity requirement we have required that two conditions must always be met: the pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense, and they must be sufficient to convince the court that the averments are not merely subterfuge. *Bata,* id.; See also *Sokoloff v. Strick,* 404 Pa. 343, 172 A.2d 302 (1961); *Hornsby v. Lohmeyer,* 364 Pa. 271, 72 A.2d 294 (1950); *Rice v. Braden,* 243 Pa. 141, 89 A. 877 (1914).

▉ In his objections to the proposed decree of distribution, Appellant averred that the property sale was "the

initial step in a fraudulent plan put into effect by Harry Schofield," (R.32a) and that the August 5, 1976, sale was procurred by fraud, (R.33a). These are the only references in this entire record to support the proposition that the sale was the product of fraud. There is no allegation that the sale itself was fraudulent, that the sale proceeds are traceable, that the property was sold for less than its fair market value, or that the decedent was induced to sell the subject property to defraud *Appellant* out of his devise. Appellant merely raises a bald accusation of fraud which is insufficient to satisfy Pa.R.C.P. 1019(b). The allegation is defective in that it fails to advise the estate of the nature of the claim being raised and provides no opportunity for the preparation of a defense. Finally, Appellant's assertions make it impossible for a court to determine whether the allegations have merit or are mere subterfuge.[2]

Appellant was given every opportunity to amend his objections, both at the Audit of May 19, 1980, and at an in-camera hearing on September 15, 1980, but chose not to offer any amendments. In view of the state of the record and pleadings, we find that fraud was not pled in conformance with Pa.R.C.P. 1019(b). Amendment at this time, therefore, would be improper. The Order of Superior Court is affirmed.

FLAHERTY and HUTCHINSON, JJ., join in this opinion.

ZAPPALA, J., concurs in the result.

LARSEN, J., files a concurring and dissenting opinion in which NIX, C.J., joins.

McDERMOTT, J., joins in the dissenting portion of the concurring and dissenting opinion of LARSEN, J.

McDERMOTT, J., files a dissenting opinion.

---

**2.** In his dissent, Mr. Justice Larsen points out allegations of fact in the pleadings which tend to establish either undue influence or fraud. We agree. However, it is to be noted that although such assertions were made, nothing specific was pleaded to support these allegations which would warrant an additional evidentiary proceeding.

LARSEN, Justice, concurring and dissenting.

I agree with the holding of the Opinion Announcing the Judgment of the Court that Section 2514(16.1) of the Probate Code ameliorates "the inflexibility of the Ademption Rule only in situations of pre-death judicial adjudications of incompetence and not in situations where no pre-death determination has been made." I register my dissent, however, to the affirmance of the dismissal of appellant's objections alleging fraud.

The decedent, A. Carolyn Schofield, died on January 2, 1979 leaving a Last Will and Testament. The decedent was survived by her husband, Harry L. Schofield, by the appellant, Lawrence F. Hitchon, and by several other heirs. At the time the decedent and her husband married, they executed an ante-nuptial agreement containing, inter alia, the following provisions:

"1. The intended Wife agrees that she will give, devise and bequeath to the intended Husband the real estate known as 1019 Franklin Avenue, Wilkinsburg, Pennsylvania, for and during the term of his natural life and the intended Husband agrees not to take against the existing Will or any other Will which the intended Wife may make provided said Will contains provisions conformable to this paragraph."

2. Each of the parties hereby release unto the other all and any inchoate intestate rights and rights as heir of any kin in and to the property of the other either as husband, wife, surviving spouse, heir at law or otherwise."

The agreement was executed on December 22, 1966 and the parties were married on January 23, 1967.

Subsequently, the decedent made certain changes in her will, and in conjunction with those changes the parties signed an additional agreement dated March 17, 1969 which provided:

". . . H.L. Schofield does hereby covenant and agree that he has read and approved the Will of his wife of even date herewith and has no objections thereto and does

hereby remise, release and discharge his right to take against the same."

"In all other respects the aforesaid ante nuptial agreement of December 22, 1966 shall remain in full force and effect."

The relevant portion of the decedent's Last Will and Testament provides as follows:

"THIRD: I give, devise and bequeath my one-half (½) interest in the real estate held by me as a tenant in common with Carmen L. Bauman, situate in New Stanton, Hempfield Township, Westmoreland County, Pennsylvania, as more fully described in deeds of record, to LAWRENCE F. HITCHON, to be his absolutely and forever.

Prior to her death, by deed dated July 28, 1976, acknowledged on August 5, 1976 and recorded on August 13, 1976, the decedent joined by her husband and a co-tenant and spouse conveyed the New Stanton real estate to bona fide third party purchasers for the price of $225,000.00.[1] The obvious resulting consequence of this conveyance was that at the time of her death the New Stanton property, which was the subject of a specific devise to the appellant, was not a part of the decedent's estate.

"The general rule [in this Commonwealth] is that a specific devise will be adeemed if at testator's death the testator no longer possessed an interest in the property devised and no contrary intention is set forth in the will. *Estate of Taylor* [480 Pa. 488, 391 A.2d 991 (1978)]; *Nakoneczny Estate*, 456 Pa. 320, 319 A.2d 893 (1974)".

*In Re Estate of Fox*, 494 Pa. 584, 431 A.2d 1008 (1981).

"This Rule [of ademption] is equally applicable where the specifically devised or bequeathed property is re-

---

**1.** The decedent's share of the sale price was appropriated by her Husband, Harry L. Schofield, and eventually deposited into an account over which he had control and in which she had no interest. The proceeds were recovered by the estate after a lawsuit alleging fraud was initiated against Harry L. Schofield and others.

moved from testator during his lifetime by an involuntary act or by operation of law. (citations omitted).

*Id.*, 494 Pa. at 587, 431 A.2d at 1010.

This asperous rule is based upon the mere fact that the property devised or bequeathed no longer exists as part of the Decedent's estate. *Nakoneczny Estate, supra; Estate of Taylor, supra.*

The legislature, recognizing the harshness of the inflexible ademption rule has provided for certain exceptions:

**Nonademption; incompetency.**—If property of an incompetent specifically devised or bequeathed is sold or exchanged or if a condemnation award or insurance proceeds are paid to the estate of an incompetent as a result of condemnation, fire or casualty, the specific legatee or devisee has the right to the net sale price, the property received in exchange, the condemnation award or the insurance proceeds. This paragraph does not apply if subsequent to the sale, exchange, condemnation, or casualty, the testator has been adjudicated competent and survives the adjudication by one year.

Probate, Estates and Fiduciaries Code, as amended 1976, July 9, P.L. 551, No. 135, § 13, 20 P.S. 2514(16.1). Additionally, legislative provisions have been made for nonademption in certain situations involving specifically bequeathed securities,[2] and in certain instances where, upon death,

---

2. **Change in securities.**—If the testator intended a specific bequest of securities owned by him at the time of the execution of his will, rather than the equivalent value thereof, the legatee is entitled only to:

(i) as much of those securities as formed a part of the testator's estate at the time of his death;

(ii) any additional or other securities issued by the same entity thereon and owned by the testator by reason of a stock dividend, stock split or other action by the entity, excluding any acquired by exercise of purchase options for more than a fractional share; and

(iii) securities of another entity received thereon or in exchange therefor and owned by the testator as a result of a merger, consolidation or reorganization of the entity or other similar change. Probate, Estates and Fiduciaries Code, as amended 1976, July 9, P.L. 551, No. 135, § 13, 20 P.S. 2514(17).

there is a balance due the testator resulting from a change in the property specifically devised.[3]

On its face, the ademption rule, although harsh, is reasonable and rational. After all, if a testator, during his lifetime, divests himself of (or is involuntarily divested of) property which he had by will devised to a named beneficiary, the subject matter of the devise is no longer a part of his property. What a testator no longer has he cannot pass on to an heir. If, however, there is added the additional fact that the divestiture was procured by fraud and undue influence intended to enrich the fraudulent schemer, or his objects, to the detriment of the intended testamentary beneficiary, the logical appeal of the ademption rule evaporates. In the midst of such circumstances, nonademption is the more sensible approach.

It may be argued that a rule of nonademption in such cases will add an element of uncertainty to the administration of estates where specifically devised or bequeathed property was alienated prior to death. Nonetheless, I believe the situations where nonademption would apply because of fraud would be few and the strict standards of proof of fraud[4] provide adequate protection against vexatious claims. Any inconvenience to an estate caused by

---

**3. Nonademption; balance.**—A devisee or legatee of property specifically devised or bequeathed has the right to any of that property which the testator still owned at his death and;

(i) any balance of the purchase price or balance of property to be received in exchange, together with any security interest, owing from a purchaser to the testator at his death by reason of a sale or exchange of the property by the testator;

(ii) any amount due for the condemnation of the property and unpaid at the testator's death;

(iii) any proceeds unpaid at the testator's death on fire or casualty insurance on the property; and

(iv) property owned by the testator at his death as a result of foreclosure, or obtained in lieu of foreclosure, of the security for a specifically bequeathed obligation.

Probate, Estates and Fiduciaries Code, as amended 1976, July 9, P.L. 551, No. 135, § 13, 20 P.S. 2514(18).

**4.** Fraud must be proved by evidence that is "clear, precise and indubitable". See: *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 285, 285 A.2d 451, 454 (1971).

nonademption in these circumstances is far outweighed by the interests of justice served. I would hold that specifically devised or bequeathed property is not adeemed where the property so devised or bequeathed is removed from the testator's estate by fraud intended to deprive the specific beneficiary of his legacy. As in the case of nonademption by reason of incompetency (20 P.S. § 2514(16.1)), the intended beneficiary of the fraudulently removed property would have a right to any proceeds or property received by the decedent or his estate in exchange therefor.

The Opinion Announcing the Judgment of the Court agrees with both the trial court and the Superior Court in concluding that the appellant, in his objections, failed to plead with specificity and particularity the fraud which he claims induced the sale of the New Stanton property and vitiated an ademption. The Opinion Announcing the Judgment of the Court states: "Appellant merely raises a bald accusation of fraud which is insufficient to satisfy Pa.R.C.P. 1019(b)" (Slip Opinion p. 8).

Rule 6.10 of the Orphans' Court Rules as adopted by this Court provides:

"Objections to an account or statement of proposed distribution shall be made or filed at such place and time, *shall be in such form,* and such notice thereof shall be given as local rules shall prescribe." (emphasis supplied)

Rule 3, Section 10 of the Local Rules of the Allegheny County Orphans' Court provides:

### Objections to Account. Service.

Specific objections to accounts may be filed in the office of the Clerk of the Orphans' Court Division as of course at any time after accounts have been confirmed nisi and before audit. If filed within five days after confirmation nisi, they will be noted on the printed audit list. Copies of all objections, when filed, must be served without delay on counsel for the accountant.

> At audit objections may be made *orally or in writing* to all accounts and to all matters set forth in or arising out of Petitions for Distribution. (emphasis supplied)

The appellant, in his written objections to the account, averred that at the time of the sale the decedent was 80 years old and suffering from severe physical infirmities and mental illness; that she was unable to care for herself; that she no longer had the capacity to make responsible business decisions; that she was regularly sedated; that she was subjected to substantial pressures and the designing influences, including fraud, of individuals close to her; that she was the victim of several fraudulent acts; that she was subject to the influence of designing persons; that the sale of the New Stanton property was the initial step in the fraudulent scheme put into effect by Harry Schofield;[5] and that the sale was procured as the result of undue influence.

The averments of the decedent's physical and mental state at the time of the sale along with the allegations of designing influence, fraudulent acts and undue influence on the part of decedent's spouse and the averments of intent on the part of decedent's husband, considered as a whole, in the context of objections to the account, are sufficient to raise the issue of fraud and undue influence entitling appellant to a hearing. I would, in this part, reverse the order of the Superior Court and remand this case to the Orphans' Court of Allegheny County for proceedings consistent with this opinion.

NIX, C.J., joins in this concurring and dissenting opinion.

McDERMOTT, J., joins in the dissenting portion of this concurring and dissenting opinion.

**5.** Harry Schofield, the decedent's spouse, was bound by the terms of the Ante Nuptial Agreement he executed on December 22, 1966 and re-confirmed in an additional agreement executed on March 17, 1969. He was fully aware of the provisions of decedent's will and that he would have no right to or claim in decedent's New Stanton property specifically devised to the appellant.

McDERMOTT, Justice, dissenting.

Property specifically devised in a will, but not owned by a testator (testatrix) at death, is adeemed. The testator's (testatrix') intention in disposing of the property in one's lifetime is not relevant and does not change or alter the fact that one cannot give what one does not possess. Nor is the devise or legacy to be substituted by its value in cash or other property.

The quarrel here is not over the intention of the testatrix, rather, the appellee argues the right to show that when the specifically devised property left the possession of the testatrix she was incompetent and therefore could form no acceptable intention; and that the intention specifically expressed in her testament ought not be obviated by an intervening incompetency.

In *Nakoneczny Estate*, 456 Pa. 320, 319 A.2d 893 (1974), this contention, despite its merit, was necessarily denied under paragraph 17, section 14 of the Wills Act of 1947,[1] which then read in pertinent part:

Ademption. A specific devise or bequest shall not be adeemed when the testator or the testator's estate receives an asset in exchange for the subject of the devise or bequest and the act which otherwise would have caused the ademption occurs while the testator is an *adjudged* incompetent. In such case the devise or bequest shall be deemed to apply to whatever was received in exchange. (emphasis added)

20 P.S. § 180.14, ¶ 17. (Repealed)

In *Nakoneczny Estate, id.*, Mr. Justice, now Chief Justice Nix, not only outlined the classic doctrines of ademption, but was required to interpret paragraph 17. Properly, he found that it was an exception to the general rule of ademption, operable however, if and only if, the testator was an "adjudged incompetent" in his lifetime.

1. Act of April 24, 1947, P.L. 89 § 14, as amended, 20 P.S. 180.14, ¶ 17.

Two years after the holding in *Nakoneczny Estate*, the legislature rewrote and rephrased Section 14, which now reads in pertinent part:

Nonademption; incompetency.—If property of an incompetent specifically devised or bequeathed is sold or exchanged or if a condemnation award or insurance proceeds are paid to the estate of an incompetent as a result of condemnation, fire or casualty, the specific legatee or devisee has the right to the net sale price, the property received in exchange, the condemnation award or the insurance proceeds. This paragraph does not apply if subsequent to the sale, exchange, condemnation, or casualty, the testator has been adjudicated competent and survives the adjudication by one year.

20 P.S. § 2514(16.1).[2]

Upon its face, there can be no question but that the legislature endeavored to relieve the harsh rule that only an "adjudged incompetent" was relieved from the consequences of his or her incompetence. By rephrasing the exception provided in section 14 of the Wills Act of 1947 the legislature not only rewrote the words but intended to change their consequence. The amended exception is now entitled, "Nonademption; incompetency" and it seems to me most clear that incompetency, whether adjudicated or not, is an exception to ademption. By removing the necessity for an "adjudged" incompetency before the exception applies, it seems most clear that incompetency may be raised whenever it is ascertained, before or after death.

It is a standard rule of statutory interpretation that each word of a statute must be given effect. *See* 1 Pa.C.S. § 1903.[3] A logical corollary to this rule is that specific deletions from statutes must also be given effect. *See Fidelity Trust Company v. Kirk*, 344 Pa. 455, 458, 25 A.2d 825 (1942): "Where words of a later statute differ from those of a previous one on the same subject they presum-

**2.** Act of July 9, 1976, P.L. 551, No. 135 § 13.

**3.** Statutory Construction Act of 1972. Act of December 6, 1972, P.L. 1339, No. 290 § 3.

ably are intended to have a different construction (citations omitted)." *See also Panik v. Didra,* 370 Pa. 488, 88 A.2d 730 (1952).

The majority apparently finds no difference between the two enactments and treats the new words to mean what was meant before. The legislature perceived a harshness and moved to rectify it. When their words are liberally construed, as they should be, they plainly present an opportunity to show incompetency whenever it can be shown to exist or existed.

Finally, I agree with Mr. Justice Larsen that allegations of fraud and undue influence were sufficiently pleaded, and that this case should be remanded to Orphan's Court for an evidentiary hearing.